# Exhibit E

1

1  UNITED STATES DISTRICT COURT

2  For the Eastern District of New York

3  Civil Action No 16-cv-5151

4  --------------------------------------------X

5  RIVKA REICHMANN

6              Plaintiff

7  V.

8  WHIRLPOOL CORPORATION and KITCHENAID, INC.,

9  ---------------------------------------------

10      D E P O S I T I O N, of DR. BRIAN D. GREENWALD.

11  The stenographic notes of the proceedings in the

12  above-entitled matter, as taken by and before, TRACY

13  COOK, a Certified Court Reporter and Notary Public of

14  the State of New Jersey, held at the offices of REGUS,

15  33 Wood Avenue South Iselin, New Jersey 08830 on Friday,

16  September 14, 2018, commencing at approximately 3:06 in

17  the afternoon.

18

19

20

21

22

23

24   Job No. CS3008184

25

**2**

1  A P P E A R A N C E S:
2
   POSNER LAW PLLC
3      Attorneys for the Plaintiff
       270 Madison Avenue
4  New York, New York 10016
   BY:  GABRIEL POSNER, ESQ.
5
6
7  NELSON MULLINS RILEY & SCARBOROUGH LLP
   Attorneys for the Defendants
8  1320 Main Street
   Columbia, South Carolina 29201
9  BY:  ROBERT FOSTER, ESQ.
   (VIA TELEPHONE)
10
11
12  ALSO PRESENT:  KENNETH GOLDBLATT, ESQ.
    (VIA TELEPHONE)
13
14
15
16
17      *      *      *
18
19
20
21
22
23
24
25

**3**

1      I N D E X O F W I T N E S S
   WITNESS      DIRECT  CROSS  REDIRECT  RECROSS
2  DR. BRIAN D. GREENWALD
3  MR. FOSTER       4
4  I N D E X O F   E X H I B I T S
5
6  EXHIBIT   EXHIBIT        PAGE
7  NUMBER DESCRIPTION
8  1    subpoena        9
9  2    CV              9
10  3-4    reports        10
11  5    flash drive    58 (Retained by counsel.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**4**

1  B R I A N   G R E E N W A L D, called as a witness,
2  having been first duly sworn by a Notary Public of the
3  State of New Jersey, was examined and testified as
4  follows:
5  DIRECT EXAMINATION BY MR. FOSTER:
6      Q.  Good afternoon, Dr. Greenwald.  This is Robert
7  Foster, lawyer for Whirlpool Corporation in Columbia,
8  South Carolina.
9      A.  Good afternoon.
10      Q.  I know from looking at your report in which you
11  attached, I guess it's your CV.  You attached your
12  five-year list of cases and trials and depositions that
13  you are familiar with this deposition process; is that
14  fair to say?
15      A.  That is fair to say.
16      Q.  Okay.  So otherwise, I know you know the rules,
17  but if for any reason you don't understand my question,
18  please feel free to let me know and I will try to
19  rephrase it so you can understand what I'm asking.  I
20  was planning to be there up in New Jersey so we could
21  make this a little easier but I ended up having to
22  cancel my trip because of this hurricane down here so
23  this will be a little more awkward to try to ask you
24  questions about your file, but we worked through it this
25  morning.  I think we'll be fine this afternoon.

**5**

1      A.  No problem.  If you come to New Jersey this next
2  time, I will take you out to dinner afterwards.
3      Q.  Good, good.  Because if I had come up there
4  yesterday, I'd probably be stuck there for about three
5  nights.  So I think the first thing, and does the court
6  reporter, do you have the three exhibits that we sent
7  ahead of time?  Let's just look at Exhibit Number 1 and
8  attached to Exhibit -- which is the subpoena for Dr.
9  Greenwald.  And attached to number one is something
10  called Schedule A.  And all I really need to know, Dr.
11  Greenwald, did you bring your file with you here today?
12      A.  Yes, I have all the records that I was supplied
13  in the letters that I was sent by Mr. Posner with me.
14  They are all electronically with me on my computer.  To
15  be the nice person that I am, I also brought them all on
16  a flash drive which I would be happy to supply to you.
17      Q.  Good, good.  So just so I could understand what
18  you have.  We might be looking at some of the medical
19  records but can you just start by telling me the
20  category of documents that you have as part of your
21  file?
22      A.  Sure.  So if you look at my report, it would be
23  basically, you know, 1 to 21 and then --
24      Q.  Okay.
25      A.  And then in addition to that, I also have -- I

2 (Pages 2 to 5)

Veritext Legal Solutions

800-567-8658                                               973-410-4098

54

1    A. It would be one of her treating clinicians. I
2  believe it was Dr. Braunstein, yes.
3    Q. Alright. So that's the -- let's go back to that.
4  Okay. So that was ENG. Now, the EEG, was that also
5  performed by Dr. Braunstein or ordered by Dr.
6  Braunstein?
7    A. Yes.
8    Q. Okay. And what objective evidence of brain
9  disfunction is on the EEG?
10   A. So if you look at page six of my report towards
11 the middle of the page, talks that about an EMG was
12 performed on 4/6/2016 for history of fatigue and to rule
13 out seizures. It talks about the study was abnormal.
14 That talks about it was consistent with a toxic
15 metabolic or diffuse ischemic event but clinical
16 correlation was recommended.
17   Q. Okay.
18   A. So clearly this lady was not suffering from any
19 toxic metabolic or diffuse ischemic event but as we know
20 well, she was suffering from a concussion or a traumatic
21 brain injury as is nicely described by Dr. Braunstein in
22 I believe it's her records.
23   Q. And did you actually review the documentation
24 that made up the EEG when you made these comments?
25   A. No.

55

1    Q. Or was this just taken?
2    A. It's just taken so these, I know it's so
3  important that we talk about objective evidence here so
4  these were --
5    Q. Right.
6    A. Two pieces of objective evidence prior to the --
7  to the, you know, to the smoking gun of MRI with DTI
8  that we looked at.
9    Q. Okay. So alright. So my question was, you
10 didn't get a copy of the entire EEG and look at it to
11 confirm for yourself whether there was any abnormal
12 findings?
13   A. No, I did not.
14   Q. Okay. Alright. That is just taken from Dr.
15 Braunstein's report?
16   A. Yes.
17   Q. Okay. When you were examining Ms. Reichmann, did
18 you recommend to her any future medical treatment for
19 her condition?
20   A. No. I was not a treating clinician. I put it
21 here into this report.
22   Q. So, you put into the report when we get to page
23 25, future medical needs. And you outline one through
24 seven but you didn't actually make any of those
25 recommendations for treatment or rehabilitation to her

56

1  directly?
2    A. I did not. That's correct.
3    Q. Okay. I'm looking over my notes right now,
4  Doctor. Meanwhile, did Ms. Reichmann or Mr. Reichmann
5  report to you that Mrs. Reichmann had some attention
6  deficit type symptoms, ADHD?
7    A. Um, the only thing that they would have told me
8  it would be all here in my interview and examination.
9    Q. Okay. I don't remember seeing that one way or
10 the other. So I was just asking if you remember
11 anything about that?
12   A. Let me take a look. So they talked about
13 impaired cognition and difficulty reading and how she
14 had been an excellent multi-tasker prior to the
15 injuries. I asked her specifically if she had ever been
16 diagnosed or treated for attention deficit hyperactivity
17 disorder which she said she had not been. And yes, and
18 then in my repeat interview and examination her past
19 medical is unchanged.
20   Q. Okay. Alright so what I think all I need to do
21 is just make sure I guess I get the file materials that
22 I don't currently have. So let's kind of wrap it up. I
23 guess what we'll do with the reference are attached to
24 your report I guess I will send the letter to Mr. Posner
25 and ask that he, I'm assuming you can print a copy of

57

1  all these references pretty readily.
2    A. I'm more of a digital guy. I will make sure to
3  send those digitally over and you guys could decide.
4    Q. Sure.
5    A. How you like to do it.
6    Q. I mean, digital is fine.
7    A. Yes. I have easy access to those references. So
8  I would be happy to provide those to you. Just make an
9  official request through Mr. Posner and I can guarantee
10 it will probably be after the Jewish holiday on
11 Wednesday but I can guarantee you have them.
12   Q. Okay. Now, other than the references, is there
13 any other material in your file that you have brought
14 with you today, other than the medical records that we
15 have already talked about?
16   A. Right and answer is just those two cover letters
17 that we were talking about from Mr. Posner's office. I
18 think other than that, it is just really medical
19 records.
20   Q. Okay. So if you could, do you have those? The
21 correspondence from Mr. Posner's office right there?
22   A. All I have with me is a flash drive that has all
23 this information on it. Just so digital. The whole
24 hospital is so digital. I try to do as little on paper
25 as I can.

15 (Pages 54 to 57)